Laurence M. Rosen, Esq. (CSB# 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071
Tel:  (213) 785-2610
Fax: (213) 226-4684
Email: lrosen@rosenlegal.com

Additional Counsel on Signature Page

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

|  |  |
|---|---|
| BILL CULLIFER, LIZ EDWARDS, DOUGLAS IRWIN, JOSEPH GUERRA, AUSTIN ARDMAN, HANK BAUMER, THOMAS BEHRENDT, ALLAN BOGH, RICHARD BROOKS, JILL CAZAUBON, JENNIFER COLE, LAUREN DANNHEIM, JENNIFER DAVIS, EDWARD DRESSEL, CHRISTOPHER DUNN, DONALD GEARHART, KENG GEE, BRIAN GUTTERMAN, HEATHER HARE, JOSE HIDALGO, NEERAJ KALRA, RYAN KEMPER, JIM KOPPS, RAJKUMAR KOTHAPA, MICHELE LARGÉ , ARUL LOUIS, THOMAS LUCAS, TOM MILLER, ERIC MORETTI, TREVOR MURDOCK, TRAVIS PALMER, ELIZABETH PRATT, ROBERT QAKISH, TINA RICHMAN, CANDACE ROSE, DANIELLE ROUGIER, RAY SCHMALZER, ZESHAN SHEIKH, CHRIS SHOUTS, ALICE SPALITTA, ZACHARY STEIN, CONNIE SUPERNAULT, RUSS TAKLE, NATE TALLEY, NIKOLAS THERIOT, ARIELLA VASQUEZ, KATE WOODS, KYLE YOUNGS, AND LIANGFANG ZHAO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br>                Plaintiffs, <br><br>      vs. <br><br> SUPERFISH, INC., and LENOVO (UNITED STATES), INC. <br><br>                Defendants. | Case No.: 15-cv-1496 <br><br> **COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION** <br><br> CLASS ACTION <br><br> **JURY TRIAL DEMANDED** |

1

**CLASS ACTION COMPLAINT**

Plaintiffs Bill Cullifer, Liz Edwards, Douglas Irwin, Joseph Guerra, Austin Ardman, Hank Baumer, Thomas Behrendt, Allan Bogh, Richard Brooks, Jill Cazaubon, Jennifer Cole, Lauren Dannheim, Jennifer Davis, Edward Dressel, Christopher Dunn, Donald Gearhart, Keng Gee, Brian Gutterman, Heather Hare, Jose Hidalgo, Neeraj Kalra, Ryan Kemper, Jim Kopps, Rajkumar Kothapa, Michele Largé, Arul Louis, Thomas Lucas, Tom Miller, Eric Moretti, Trevor Murdock, Travis Palmer, Elizabeth Pratt, Robert Qakish, Tina Richman, Candace Rose, Danielle Rougier, Ray Schmalzer, Zeshan Sheikh, Chris Shouts, Alice Spalitta, Zachary Stein, Connie Supernault, Russ Takle, Nate Talley, Nikolas Theriot, Ariella Vasquez, Kate Woods, Kyle Youngs, and Liangfang Zhao, individually and on behalf of all other persons similarly situated, by their undersigned attorneys, allege in this Complaint the following upon knowledge with respect to each of their own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of defendants' public documents and statements relevant to the instant action; (b) review and analysis of the marketing materials utilized by defendant in connection with the marketing and sales of the products subject of the Complaint; (c) information readily obtainable on the Internet; and (d) interviews of witnesses with personal knowledge of the relevant facts.

Plaintiffs believe that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Additional facts supporting the allegations contained herein are known only to defendant or are exclusively within its control.

## I.   NATURE OF THE ACTION

1.   This is a class action on behalf of a class consisting of all persons and entities, other than defendants and its officers and directors, who purchased within the United States laptop computers marketed and sold by Lenovo (United States), Inc. ("Lenovo") under various model names between January 1, 2012 to the present (the "Class Period")[1] that came with a software program titled "Superfish" pre-installed ("the Products") seeking to recover damages

---

[1] Because models of the Products were also sold for periods of time without the complained of software installed, it is unknown when the Products were first introduced to the market. This information is known by Defendants and Plaintiff will file amended pleadings to conform the Class Period with the evidence obtained through discovery. The complete class definition is set forth in Section V.

**CLASS ACTION COMPLAINT**

caused by defendants' unlawful conduct and violations of various state consumer protection laws (the "Class").

2.     Lenovo is the third largest distributor of personal computers in the United States with a 10.8% market share, and generated revenue of approximately $6.1 billion in its "American Group" of regional sales.  Laptop computers comprised approximately 51% of Lenovo's revenues.

3.     At the beginning of the Class Period, Lenovo pre-installed a software program onto the Products called Superfish during the manufacturing stage of the product and prior to sending them directly to consumers where the sale was direct or before distributing them to retailers for the sale to the consuming public.

4.     This software caused users to be deprived of the full use of the computers they had purchased, prevented the users from using their computers for the typical purposes that the computers were purchased for, and deprived the users of obtaining useful recovery software that was to be included with computers free of charge

5.     In particular, and unbeknownst to the Plaintiffs and the Class, the Superfish software installed on each of their computers utilized means of spying on the user which exposed the user to serious security vulnerabilities; intercepted users' private and secured information, such as financial information, and transmitted such information to third parties; and interfered with the users' computer experience by, among other things, congesting their internet connection with undesired advertisements and displaying said advertisements within the users' search results, and utilizing system resources to carry out said processes.   Moreover, because the Superfish software was installed, the consumers were deprived of obtaining a useful, secure, recovery media that they were otherwise entitled to as part of the purchase price, and without, would cost each of the consumers no less than $60 to obtain directly from Lenovo.

6.     Lenovo knew that the Superfish software created serious security vulnerabilities, interfered detrimentally with the user experience,  and otherwise rendered the Products unfit for the purposes of which they were sold.  Despite this awareness, Lenovo caused the software to be

**CLASS ACTION COMPLAINT**

installed because it financially benefitted from the software through remuneration for the ads that were displayed during the users internet searches.

7.     In February 2015, the existence of Superfish and the manner of its operation were discovered and widely disseminated by the press.  So severe was the security vulnerabilities that security commentators advised users of the Products to cease using the Products until the security matter was resolved.

8.     Given the widespread backlash, Lenovo has apologized to users, released a tool to enable users to remove the software and its components, and made a commitment to not install the software in the future or any other similar software (commonly referred to as "bloatware" because, in essence, such software lacks any value other than taking up storage space and computer resources).

9.     While Lenovo was enriched by its scheme through the monies it received from installing Superfish and the ads displayed by Superfish on the Class members computers, Plaintiffs and the Class suffered damages as a result of each of their purchases of the Products because: (a) the Products performed less than reasonably expected due to Superfish; (b) provided a lesser user experience than reasonably expected due to Superfish; (c) their private data was exposed and transferred to third parties; (d) they are exposed to a substantial risk of identity theft and related fraud; and (e)  were denied a means to obtain a recovery disc to protect from future computer failures that is marketed as included, and reasonably expected, with the Products.

10.    Plaintiffs were harmed by both the operations of the software (its discovery and transmittal of private information) and by being denied the value of what was marketed to Plaintiffs – a computer that operated in accordance to the hardware specifications, fit for ordinary use, and consisting of a means of recovering from operating system failures.

11.    Had Plaintiffs and the Class members known of the true facts about the Products, they would either have not purchased them, or would have not purchased the Products at inflated prices.

**CLASS ACTION COMPLAINT**

## II.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, at least one member of the class of plaintiffs is a citizen of a state different from defendants, and the number of members of the proposed class is in the aggregate 100 or more.

13.    This Court also has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331.

14.    This Court also has subject matter jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims so as to form part of the same case or controversy under Article III of the United States Constitution.

15.    Exercise of jurisdiction over Defendants complies with the traditional notions of fair play and substantial justice as the Defendants purposefully availed themselves of the jurisdiction of this Court and reasonably foresaw that they would be subject of a lawsuit in this jurisdiction as a result of their marketing and directing the sales of the Products into California and through the residence and/or significant and pervasive contacts with this State that gave rise to the present claims.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this district and because Defendants:

a.    is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

b.    does substantial business in this district; and

c.    is subject to personal jurisdiction in this district.

## III.   PARTIES

17.    Plaintiff Bill Cullifer was at all relevant times a California citizen who resides in Folsom, California.  During the Class Period, Mr. Cullifer purchased a Lenovo Yoga Series laptop, model Yoga 2-11.

**CLASS ACTION COMPLAINT**

18.     Plaintiff Liz Edwards was at all relevant times a California citizen who resides in La Jolla, California.  During the Class Period, Mrs. Edwards purchased a Lenovo Thinkpad T-Series laptop computer, model T540p.

19.     Plaintiff Douglas Irwin was at all relevant times a California citizen who resides in Ojai, California.   During the Class Period, Plaintiff Irwin purchased a Lenovo Flex Series laptop computer, model Flex2.

20.     Plaintiff Joseph Guerra was at all relevant times a California citizen who resides in Oxnard, California.  During the Class Period, Plaintiff Guerra purchased a Lenovo G Series, model G50.

21.     Plaintiff Austin Ardman was at all relevant times a Texas citizen who resides in San Antonio, Texas.  During the Class Period, Plaintiff Ardman purchased a Lenovo Yoga Series laptop computer, model Yoga 2 Pro.

22.     Plaintiff Hank Baumer was at all relevant times an Arizona citizen who resides in Tucson, Arizona.  During the Class Period, Plaintiff Baumer purchased a Lenovo Y Series laptop computer, model Y50.

23.     Plaintiff Thomas Behrendt was at all relevant times a Connecticut citizen who resides in New Haven, Connecticut.  During the Class Period, Plaintiff Behrendt purchased a Lenovo Y Series laptop computer, model Y50.

24.     Plaintiff Allan Bogh was at all relevant times a Washington citizen who resides in Spanaway, Washington.  During the Class Period, Plaintiff Bogh purchase a Lenovo Yoga Series laptop computer, model Yoga 2 Pro.

25.     Plaintiff Richard Brooks was at all relevant times an Alabama citizen who resides in New Hope, Alabama.   During the Class Period, Plaintiff Brooks purchased a Lenovo Flex Series laptop computer, model Flex2.

26.     Plaintiff Jill Cazaubon was at all relevant times a Louisiana citizen who resides in Lafayette,  Louisiana.  During the Class Period, Plaintiff Cazaubon purchased a Lenovo Flex Series laptop computer, model Flex2.

**CLASS ACTION COMPLAINT**

27.    Plaintiff Jennifer Cole was at all relevant times a New York citizen who resides in White Plains, New York.    During the Class Period, Plaintiff Cole purchased a Lenovo Yoga Series laptop computer, model Yoga 2 Pro.

28.    Plaintiff Jennifer Davis was at all relevant times a Georgia citizen who resides in Fayetteville, Georgia.    During the Class Period, Plaintiff Davis purchased a Lenovo Z Series laptop computer, model Z50.

29.    Plaintiff Lauren Dannheim was at all relevant times a Texas citizen who resides in Cibolo, Texas.  During the Class Period, Plaintiff Dannheim purchased a Lenovo Z Series laptop computer, model Z50.

30.    Plaintiff Edward Dressel was at all relevant times an Oregon citizen who resides in Dallas, Oregon.  During the Class Period, Plaintiff Dressel purchased a Lenovo Yoga Series laptop, model Yoga 2.

31.    Plaintiff Christopher Dunn was at all relevant times a Maryland citizen who resides in Baltimore, Maryland.    During the Class Period, Plaintiff Davis purchased a Lenovo Yoga 2 Series laptop computer, model Yoga 2 Pro.

32.    Plaintiff Donald Gearhart was at all relevant times a Pennsylvania citizen who resides in Jeannette, Pennsylvania.    During the Class Period, Plaintiff Gearhart purchased a Lenovo Y Series laptop computer, model Y50.

33.    Plaintiff Keng Gee was at all relevant times a citizen of Idaho who resides in Boise, Idaho.    During the Class Period, Plaintiff Gee purchased a Lenovo Z Series laptop computer, model Z50.

34.    Plaintiff Brian Gutterman was at all relevant times a citizen of Minnesota who resides in Woodbury, Minnesota.  During the Class Period, Plaintiff Gutterman purchased a Lenovo Yoga Series laptop computer, model Yoga 2 Pro.

35.    Plaintiff Heather Hare was at all relevant times a citizen of Texas who resides in Warren, Texas.  During the Class Period, Plaintiff Hare obtained a Lenovo G Series laptop computer, model G50.  In addition to the damages alleged herein elsewhere, Plaintiff Hare also

**CLASS ACTION COMPLAINT**

incurred expenses as a result of being charged for data usage overages by her internet service as a result of the Superfish software.

36. Plaintiff Jose Hidalgo was at all relevant times a Texas citizen who resides in Houston, Texas. During the Class Period, Plaintiff Hidalog purchased a Lenovo Yoga Series laptop computer, model Yoga 2 Pro.

37. Plaintiff Neeraj Kalra is a resident of Georgia who resides in Atlanta, Georgia. Plaintiff Kalra purchased a Lenovo Yoga Series laptop computer, model Yoga 2-13.

38. Plaintiff Ryan Kemper was at all relevant times a Michigan citizen who resides in Ypsilanti, Michigan. During the Class Period, Plaintiff Kemper purchased a Lenovo Z Series laptop computer, model Z40.

39. Plaintiff Jim Kopps was at all relevant times a Wisconsin citizen who resides in Franklin, Wisconsin. During the Class Period, Plaintiff Kopps purchased a Lenovo Yoga Series laptop computer, model Yoga 2.

40. Plaintiff Rajkumar Kothapa was at all relevant times a New Jersey citizen who resides in Secaucus, New Jersey. During the Class Period, Plaintiff Kothapa purchased a Lenovo Yoga Series laptop computer, model Yoga 2 Pro.

41. Plaintiff Michele Largé was at all relevant times a California citizen who resides in West Hollywood, California. During the Class Period, Plaintiff Largé obtained a Lenovo G Series laptop computer, model G50.

42. Plaintiff Arul Louis was at all relevant times a New York citizen who resides in New York, New York. During the Class Period, Plaintiff Louis purchased a Lenovo G Series, model G500S.

43. Plaintiff Thomas Lucas was at all relevant times a Texas citizen who resides in Big Sandy, Texas. During the Class Period, Plaintiff Lucas purchased a Lenovo Yoga Series laptop computer, model Yoga 2.

44. Plaintiff Tom Miller was at all relevant times a New York citizen who resides in Rexford, New York. During the Class Period, Plaintiff Miller purchased a Lenovo Yoga Series laptop computer, model Yoga 2 Pro.

8

**CLASS ACTION COMPLAINT**

45.     Plaintiff Eric Moretti was at all relevant times a New York citizen who resides in New York, New York.   During the Class Period, Plaintiff Moretti purchased a Lenovo Yoga Series laptop computer, model Yoga 2.

46.     Plaintiff Trevor Murdock was at all relevant times a Texas citizen who resides in New Braunfels, Texas.  During the Class Period, Plaintiff Murdock purchased a Lenovo U-series laptop computer, u530.

47.     Plaintiff Travis Palmer was at all relevant times a Connecticut citizen who resides in Naugatuck, Connecticut.   During the Class Period, Plaintiff Palmer purchased a Lenovo G Series laptop computer, model G50.

48.     Plaintiff Elizabeth Pratt was at all relevant times a Massachusetts citizen who resides in Westborough, Massachusetts.  During the Class Period, Plaintiff Pratt purchased a Lenovo G Series laptop computer, model G50.   As a result of the Superfish, Ms. Pratt experienced identity theft including the attempted change of her mailing address on credit cards and the filing of fraudulent tax returns in her name and identity.

49.     Plaintiff Robert Qakish was at all relevant times a Tennessee citizen who resides in Murfreesboro, Tennessee.   During the Class Period, Plaintiff Qakish purchased a Lenovo Yoga Series laptop computer, model Yoga 2-11.

50.     Plaintiff Tina Richman was at all relevant times a Florida citizen who resides in Palm Beach, Florida.   During the Class Period, Plaintiff Brooks purchased a Lenovo Yoga Series laptop computer, model Yoga 2.

51.     Plaintiff Candace Rose was at all relevant times an Arizona citizen who resides in Phoenix, Arizona.   During the Class Period, Plaintiff Rose purchased a Lenovo Yoga Series laptop computer, model Yoga 2-13.

52.     Plaintiff Danielle Rougier was at all relevant times a New York citizen who resides in West Chazy, New York.   During the Class Period, Plaintiff Rougier purchased a Lenovo Yoga Series laptop computer, model Yoga B40-30.

53.     Plaintiff Ray Schmalzer was at all relevant times a Marlyand citizen who resides in Bel Air, Maryland.  During the Class Period, Plaintiff Schmalzer purchased a Lenovo Flex

**CLASS ACTION COMPLAINT**

Series laptop computer, model Flex2. In addition to the damages alleged herein elsewhere Plaintiff Schmalzer incurred additional expenses in connection with paying a third party to remove Superfish from his computer.

54. Plaintiff Zeshan Sheikh was at all relevant times a Virginia citizen who resides in McLean, Virginia. During the Class Period, Plaintiff Sheikh purchased a Lenovo Y Series laptop computer, model Y40.

55. Plaintiff Chris Shouts was at all relevant times a Wisconsin citizen who resides in Wauwatosa, Wisconsin. During the Class Period, Plaintiff Shouts purchased a Lenovo Yoga Series laptop computer, model Yoga 2 Pro.

56. Plaintiff Alice Spalitta was at all relevant times a Wisconsin citizen who resides in Middleton, Wisconsin. During the Class Period, Plaintiff Spalitta purchased a Lenovo Yoga Series laptop computer, model Yoga 2 Pro.

57. Plaintiff Zachary Stein was at all relevant times a Maryland citizen who resides in College Park, Maryland. During the Class Period, Plaintiff Stein purchased a Lenovo Y Series laptop computer, model Y50.

58. Plaintiff Connie Supernault was at all relevant times an Oklahoma citizen who resides in Owasso, Oklahoma. During the Class Period, Plaintiff Supernault purchased a Lenovo Y Series laptop computer, model Y50-70.

59. Plaintiff Russ Takle was at all relevant times a Washington citizen who resides in Bothell, Washington. During the Class Period, Plaintiff Takle purchased a Lenovo Yoga Series laptop computer, model Yoga 2.

60. Plaintiff Nate Talley was at all relevant times a Texas citizen who resides in Fort Worth, Texas. During the Class Period, Plaintiff Davis purchased a Lenovo Yoga Series laptop computer, model Yoga 2-11.

61. Plaintiff Nikolas Theriot was at all relevant times a Florida Citizen who resides in Largo, Florida. During the Class Period, Plaintiff Theriot purchased a Lenovo Z Series laptop computer, model Z50.

**CLASS ACTION COMPLAINT**

62.     Plaintiff Ariella Vasquez was at all relevant times a New Jersey citizen who resides in Teaneck, New Jersey, During the Class Period, Plaintiff Vasquez purchased a Lenovo Yoga Series laptop computer, model Yoga 2 Pro.

63.     Plaintiff Kate Woods was at all relevant times a North Carolina citizen who resides in Carthage, North Carolina.     During the Class Period, Plaintiff Woods purchased Lenovo Yoga Series laptop computers, model Yoga 2 Pro, and a G Series laptop computer, model G50.

64.     Plaintiff Kyle Youngs was at all relevant times a New York citizen who resides in Williamson, New York.  During the Class Period, Plaintiff Youngs purchased a Lenovo Yoga Series laptop computer, model Yoga 2 Pro.

65.     Plaintiff Liangfang Zhao was at all relevant times a Massachusetts citizen who resides in Waltham, Massachusetts.  During the Class Period, Plaintiff Zhao purchased a Lenovo Y Series laptop computer, model Y40-80.

66.     At all relevant times herein, each of the plaintiffs was exposed to and saw Lenovo's claims and marketing concerning the laptop that he or she purchased.  Particularly, in making each of their purchases, each of the plaintiffs saw and relied upon the marketing materials concerning the laptop she purchased.

67.     Unbeknownst to each of the Plaintiffs, each of the laptops they purchased came with the Superfish adware preinstalled.  Plaintiffs were not aware that Superfish adware was preinstalled, the purpose of Superfish, the mechanics of Superfish or that as a result, and detailed herein, their laptops contained serious security vulnerabilities associated with the Superfish installation, were not fit for their intended purpose, failed to provide them with usable recovery media options thereby warranting additional purchases of expensive software to ensure the future use of their computers, and provided substandard performance and user experience due to the Superfish installation.   Accordingly, Plaintiffs did not receive the full value of the product as marketed by Lenovo and were harmed through their purchases and use of the laptop computer as alleged herein.

**CLASS ACTION COMPLAINT**

68.     Lenovo is a Delaware corporation that maintains its principal place of business in Morrisville, North Carolina.  Lenovo is the United States operating subsidiary through which its parent, Lenovo Group Limited, a Hong Kong corporation with its principal place of business in Beijing, China, designs, markets, sells and distributes laptop and desktop computers, tablets and other electronics into the United States marketplace.  In 2014, Lenovo Group Limited was the world's largest personal computer vendor by unit sales.  Also in 2014 Lenovo was the third largest distributor of personal computers in the United States with a 10.8% market share, and generated revenue of approximately $6.1 billion in its "American Group" of regional sales. Laptop computers comprised approximately 51% of Lenovo's revenues.

**69.**     Superfish, Inc. ("Superfish, Inc.") is a Delaware corporation with its principal place of business in Palo Alto, California.  Superfish, Inc. develops visual search technology, and designed, created, marketed and distributed a software program called "Superfish" that enables third parties to monetize user web browsing by intercepting user data and injecting advertisements into a user's web browsing session.   Superfish, Inc. marketed and sold the Superfish software to Lenovo for installation on the Products.

**IV.     FACTUAL ALLEGATIONS**

70.     Lenovo is a designer, manufacturer, distributor and direct retailer of personal computers and mobile electronics.  During the Class Period, Lenovo designed, manufactured and caused to be distributed the Products to the general marketplace throughout California and the United States.

71.     Lenovo's role in the personal computer industry is referred to as original equipment manufacturers (OEMs).  By and large, an OEM in the personal computer market purchases commodity inputs that they then assemble to create the end product.  For example, for a standard laptop, the OEM will have a third party manufacture a motherboard and chassis, and then purchase a certain model of CPU from Advanced Micro Devices or Intel, a quantity of industry standard Dynamic Random Access Memory (DRAM), an LCD panel from a LCD manufacturer, networking hardware, speakers, external storage drive, hard drive, a battery and a

keyboard.  The OEM will also use a standard third party operating system, in this instance the Windows operating system developed by Microsoft Corporation,  that it can slightly modify by installing third party software.  The OEM assembles these inputs, and sells the end product laptop to retailers, or directly to consumers through online direct sales.

72.     Given its role predominantly as an assembler of commodity products, the operating margins for OEMs selling computers is generally very small.   In 2014, Lenovo's America's Group operating margin (which includes higher margin products such as cell phones), was just 0.8%.

73.     Lenovo markets its laptop computers by, among other things, providing the specifications of the hardware that will comprise the laptop, such as the type and speed of the central processing unit, the speed and amount of the random access memory, the lcd screen type and size, and amount of disk drive storage, as well as other hardware components that collectively differential the models of laptop.

74.     The hardware specifications marketed are material to the consumer as they provide the consumer with a basis for reasonably determining the speed and experience that the purchaser can anticipate.  As such, specifications are the guideline by which a consumer can determine the performance of a laptop and how much that additional, or lesser, performance will cost/save them.

75.     Hardware specifications are also of material importance because they are the principal basis for a consumer to comparison shop amongst the various OEMs of computers. Given that personal computers are an assembly of identified third-party commodity products, a computer with the same inputs should perform approximately the same regardless of the OEM that assembled those parts.

76.     As set forth above, OEMs frequently install additional third-party software onto the operating system of the computers that they sale.  OEMs do so in exchange for payment from the third-parties for the installation of the software.

77.     Lenovo pre-installed a third-party software program called Superfish on the Windows Operating System installed and operated by the Products.  Upon information and

13

**CLASS ACTION COMPLAINT**

belief, not only was Lenovo compensated for each pre-installation of Superfish on the Products, but because of the nature of Superfish, was also compensated by participating in the revenue stream generated by the ads displayed by Superfish during the users online searches.

78.    Among the laptop computers Lenovo sold during the Class Period were laptops directed to the consumer marketplace in which Lenovo had installed a software program called Superfish.  Among the Products sold included those with the following model numbers:

G Series: G410, G500, G500S, G510, G710, G40-70, G50-70, G40-30, G50-30, G40-45, G50-45

U Series: U330P, U430P, U330Touch, U430Touch, U530Touch

Y Series: Y430P, Y40-70, Y40-80, Y50-70

Z Series: Z40-75, Z50-75, Z40-70, Z50-70

S Series: S310, S410, S40-70, S415, S415Touch, S20-30, S20-30Touch

Flex Series: Flex2 14D, Flex2 15D, Flex2 14, Flex2 15, Flex2 14(BTM), Flex2 15(BTM), Flex 10

MIIX Series: MIIX2-8, MIIX2-10, MIIX2-11

YOGA Series: YOGA2Pro-13, YOGA2-13, YOGA2-11BTM, YOGA2-11HSW

E Series: E10-30

79.    The software was installed by Lenovo, while the Products and components comprising the Products were under the control of Lenovo.  The software was not installed at the request of Plaintiffs or the Class.  The software was not knowingly activated or authorized by the Plaintiffs and the Class, and the Plaintiffs and the Class did not knowingly agree to the explicit functionality of the Superfish software, if any, or the means through which the Superfish software functioned.

80.    Notably, Lenovo did not install the software onto the laptops that it marketed for sale to businesses.  Lenovo's targeting consumers evidences the innately crippling nature of the software, its repulsively intrusive nature, and complete lack of any value to the end user.  Lenovo's specific targeting of consumers was oppressive and malicious, and supports an award of punitive damages.

**CLASS ACTION COMPLAINT**

**SUPERFISH – Adware, Malware and Spyware All In One**

81.     Superfish was developed, marketed and sold by Defendant Superfish, Inc. to Lenovo for the intended purpose that Lenovo would install it on certain of the computers it was manufacturing and producing, including the Products.

82.     Superfish, Inc. was founded by a former employee of Verint, an intelligence company founded by members of the Israeli secret intelligence agency Unit 8200 and which was believed to have assisted the United States National Security Agency in tapping various United States based communications providers' communications lines, where he carried out "signal processing research." Superfish includes components that were developed by a company named Komodia whose founder was also part of the surveillance industrial complex in Israel and offers software which functions to circumvent the most common means of protecting internet web users' privacy from uninvited or unintended third parties.

83.     Superfish is marketed as online visual search software that provides users product advertisements by scanning and examining the pictures contained in a webpage a user is viewing. According to Lenovo, Superfish "instantly analyzes images on the web and presents identical and similar product offers that may have lower prices." When a user, including the Plaintiffs, obtain results from a search engine, or hovers a cursor over online images, the Superfish software will scan the webpage and its images, and then insert additional ads into the webpage or by additional popup browser windows that the software claims is relevant.

84.     In essence, Superfish gains access surreptitiously to users with the sole purpose of providing additional advertisements to users. Such software is commonly referred to as adware.

85.      Superfish is also spyware, not because of its deep roots originating within the spy community, but because it fits squarely into the general category of software that surreptitiously monitors, intercepts and transmits user information. Superfish operates by monitoring, snooping and tracking user browsing, intercepting and analyzing information entered and obtained by the user, and then transmitting the intercepted information to Superfish for further processing and use by Superfish.

**CLASS ACTION COMPLAINT**

86.     Superfish is also considered malware.  Malware, short for malicious software, is frequently a catch-all term that can include computer viruses, worms or spyware.  The defining characteristic of malware is that it causes damage to a computer or otherwise interferes with the normal operations of software purposely put into place.  Superfish damages a computer and interferes with the normal operations of software purposefully put into place through eliminating the security layers put into place to keep users' online data transactions secure.

87.     In summary, Superfish does the following: (1) Hijacks legitimate connections; (2) Monitors user activity; (3) Collects personal information and transmits it to its own servers or that of unknown third parties; (4) Injects additional unrequested advertising in legitimate pages and presents advertisements by means of pop-up browser windows; and (5) Exposes the user to multiple serious security vulnerabilities, as alleged below.

**Superfish – A Parasite By Any Other Name – The Operation of Superfish**

88.     Superfish places its own advertisements into Google search results based upon the images present on the users browsing window.

89.     In an attempt to create relevant advertisements, and thus more likely for the user to click on, thereby maximizing the profits of Superfish and Lenovo, Superfish analyzes the images that were provided by Google in response to the users' Google search request.

90.     Despite its slogan to "Search Visually" and its representations to "deliver[] the true promise of visual search", Superfish is anything but a visual search agent and it certainly does not search "visually."  Superfish does not act like an artificial intelligence agent looking over the shoulder of the user.  Instead, Superfish places itself between the users' browser session and the source of the data sent from servers on the internet.  Superfish obtains the image data by intercepting the data sent by the user to Google, or other websites, and received in return from the servers the user is interacting with, eg., Google servers that provide the user the search results they seek.  It then takes the data it has intercepted and sends it to its own servers operated and controlled by Superfish for analyzing.  The offsite Superfish servers then analyze the data, create purportedly relevant advertisements based on that data, and transmit those advertisements back

**CLASS ACTION COMPLAINT**

to the Superfish program that is installed on the users' computer. The Superfish program then injects the advertisements it received into the browsing session of the user.

91.     In order to carry out its process, Superfish must be able to intercept the data stream to and from the user[2] to the third party server, eg. a Google search server. Alas, Google and many other websites, now by default use a security layer that ensures that all data passed between a web server and browser remains private and protected from a "man-in-the-middle" that could intercept such information and use it for nefarious purposes. The security layer most commonly used is called Secure Sockets Layer (SSL). It is used by banking institutions, ecommerce sites, health care portals, webmail logins, and any service in which a user will want to keep the data transmitted secure. Beyond such expected uses, SSL is now used widely independent of the nature of the data transmitted. For example, Google by default connects a user via SSL, and there is an industry wide push to make SSL connections the default for all web browsing connections.

92.     To use SSL, the webserver, eg., those operated by Google, contain an SSL Certificate. When a user connects securely to the webserver, the user PC checks the certificate with a trusted "certificate authority" to validate the authenticity of the certificate so that it can be determined that the connection is being made with the actual intended site (as opposed to an imposter server). Once confirmed, the SSL Certificate on the server creates cryptographic keys which, when processed, creates a secure link between the webserver and the users' computer by encrypting the data sent between the two computers.

93.     Because Superfish works through the interception of data, rather than the actual "visual" analysis that it claims, Superfish cannot function if it is unable to intercept and understand the data sent between the user and the third party server. By closing the connections between the user computer and the destination server, as well as by encrypting all such data, SSL connections prevent Superfish from obtaining any usable data. During the Class Period, Google,

---

[2] "User," "Users" or any variation thereof including "user" or "users" shall also mean, and include, for purposes of this Complaint the Plaintiffs and members of the Class.

17

**CLASS ACTION COMPLAINT**

by default, establishes an SSL connection between its servers and users' computers. This left the Lenovo installed Superfish software of little value standing alone because it targeted data intercepted between the user and Google.

94.    To overcome the security, Superfish implemented a means to get around this by hijacking encrypted web sessions so that it could have access to the data being transmitted between the user and the secure server. Superfish achieved this by using software that modified a computers network stack and added a new root Certificate Authority certificate, specifically a Superfish self-signed root HTTPS certificate. Consequently, when a user would visit any secure website, the site certificate would be signed and controlled by Superfish which would falsely represent itself as the official website certificate. In essence, Superfish used a certificate that allowed it to spoof all other certificates. This enabled Superfish to intercept encrypted traffic for every website a user visits and hide this fact from the user (a function of SSL is to inform the user when the user has connected to a non-authentic website masquerading as that of another, eg., a website that looks like a legitimate banks website and represents itself as the legitimate website, but is really a website located on a malicious hacker's server).

95.    In total, Superfish removes important security layers from the users' computers and exposes users to serious security vulnerabilities as follows: (1) Uses man-in-the-middle attack techniques to break open and access secure connections for its own use and potentially that of others thereby removing the ability of the users to trust that any secure connection is actually established; (2) Denies the ability the user of examining the validity of a webserver's certificate by presenting users with its own fake certificate; (3) Used a certificate that used outdated security means making it easily crackable; (4) Used a certificate scheme whereby the same certificate was used for every Superfish user thereby enabling malicious hackers to easily execute man-in-the-middle attacks; and (6) Used a certificate that accepted outdate encryption ciphers that are known to be vulnerable and easily decrypted thereby making the data vulnerable outside of man-in-the-middle attack.

**THE CONSEQUENCES OF SUPERFISH – MAKING A SUCKER OUT OF CONSUMERS**

18

**CLASS ACTION COMPLAINT**

96.     Superfish steals the data allotments of users and decreases the browsing experience of the user.  By retransmitting data already downloaded by the user (e.g., from Google) to Superfish, along with Superfish's downloading of additional data (the new advertisements), Superfish utilizes considerable internet bandwidth of the user.  As bandwidth is finite at any one point in time, Superfish decreases the bandwidth available to the user to achieve the users intended needs, eg., the completion of the requested Google search results and the downloading/completion of the subsequent links clicked on.   This results in decreased responsiveness to the user, in the form of the computer waiting on delays created by Superfish' retransmission and receipt of data (this includes the "ping time," or the round-trip time for messages sent between two networked computers), and slower completion times of receiving the user requested data (because Superfish is borrowing from the finite pipeline for its own use of uploading/downloading data) for the users browsing interactions.   By retransmitting and downloading additional data, Superfish also decreases the total amount of desired bandwidth a Class member is entitled to use since internet service providers allocate an aggregate amount of data a user can download during a set period of time, typically on a monthly basis.

97.     Superfish also utilizes the users' computer's processing power at the expense of other computer processes.  By allocating the computational resources to itself, at the expense of those resources being used by the computer to assist in "drawing" the web page, or other purposes specified by the user such as tasks he/she may intentionally be running in the background, Superfish increases the draw times of the users browsing session, slows down the completion of other computer operations that the user relies upon and desires.  Individually, or collectively, Superfish steals the users bandwidth allotment, increases power consumption by using the computers' resources that could be used elsewhere, and negatively impacts the users' computer and browsing experience.

98.     Through its use of a self-signed certificate, Superfish was able to, and did, without knowledge or permission of the Class, intercept, process and export to Superfish and other third parties associated with Superfish private user data that was intended to be secure, including

**CLASS ACTION COMPLAINT**

passwords, logins, credit cards, social security numbers and other personal data that a person may submit or receive during a web session.

99.     The use of Superfish of a self-signed certificate exposed Class members to serious security vulnerabilities.  Specifically, it exposed users to "man-in-the-middle attacks" that are trivial to carry out because Superfish used the same private encryption key for the Superfish-signed Transport Layer Security Certificate for every user and used the password "komodia" to encrypto the cryptographic key the encrypted the Superfish certificate.  As set forth herein, Komodia is the company which, upon information and belief, provided the SSL hijacking method for use by Superfish and markets software for the sole purpose of circumventing SSL connections and encryption.

100.    As a consequence of surreptitiously installing the rogue certificate, deploying the same certificate to all Superfish users, and at a minimum negligently protecting the cryptographic key encrypting the Superfish certificate through the use of a password that took a mere three hours to crack by a lone security researcher, Superfish exposed users to "man-in-the-middle attacks" whereby third parties could create imposter websites such as banking websites and use the Superfish key so that users with the Superfish root certificate installed would not be made aware that the sites were forgeries, thereby resulting in the user submitting private data to the imposter site,

101.    "Man-in-the-middle" attacks based on the Superfish vulnerability were not just theoretical.  During the Class Period, and continuing, malicious hackers exploited the Superfish security vulnerabilities by launching man-in-the-middle attacks on end users visiting an extensive array of sites from Google's g-mail, to payment checkout systems including payments used for eBay to online banking sites including HSBC and Wells Fargo, and several insurance websites.  Through these "attacks" there malicious parties were able to gain access to the Class members' bank accounts, e-commerce accounts, search histories, social media accounts and web-based email accounts.   These attacks also enabled these actors to install additional malicious software onto the Class members' computers that could permanently compromise a user's security.

**CLASS ACTION COMPLAINT**

102.    Superfish is a software programs that gains access to users computers surreptitiously, intercepts and transmits users' private information with third parties, degrades the users' computer and internet experience by clogging the users internet bandwidth, slowing processing performance and foisting unsolicited advertising into the users' browsing session, and opened a gaping security hole on the users' computer that exposes, and did expose, the Class members to serious security vulnerabilities, and provides but a single benefit – a benefit to Lenovo and Superfish in the form of revenue from the ad placements.   The Class members did not knowingly permit, allow, or authenticate the installation of Superfish and were deprived from knowing the truth concerning its existence, the means by which it operated and the full extent of its operation and the consequences therefrom.

103.    The Products sold included both the hardware and a license to the operating system and pre-installed software.  Computer OEMs have long provided consumers the means by which they are able to perform a fresh install of the operating system and software that comes installed on their computer.  Such an offering is integral to the purchaser of an OEM computer as it ensures that the customer will be able to have access and use of the operating system and other preinstalled software provided to them as part of the purchase of the computer in the event the computer experiences corruption and requires reinstallation of the software.  Lenovo advertised to Class members that each of the Products contained and/or would contain a means by which the user could create a recovery medium so that the user could complete a fresh install of the operating system as though it came from the factory.  Rather than provide a DVD or CD with a disk image for recovery purposes, as was the norm historically, Lenovo maintains a "recovery partition" on the hard drives of the computer that contain a disk image of the factory install and operating system. A program on each of the computers permits the user to then back up this partition for safe keeping to a optical drive or other medium such as a removable flash drive. Because the Products recovery partition is preinstalled with Superfish, the Class members were deprived of the ability to have, create and maintain access to the operating system software that is otherwise fit for its customary use as a means of operating system recovery. As summed up by Security expert Tory Hunt in an interview with Forbes:

21

**CLASS ACTION COMPLAINT**

I recently bought a new Lenovo machine myself and the first thing I did was to install a clean version of Windows. That's the only way you're going to have confidence that it hasn't come pre-installed with anything nasty (potential monitoring in device firmware aside) and that' what I'd be suggesting to anyone concerned about this.

In order to obtain the recovery software that is fit for customary use, which the Class members reasonably expected and were promised as part of the bargain in purchasing the Products, Lenovo would have to create a disk image that does not contain Superfish. Each of the Class members would then have to purchase physical medium from Lenovo which Lenovo sells separately for approximately $60.00. Alternatively, users would have to purchase a new license and copy of the Windows Operating System and expend the necessary resources to perform a fresh installation or pay another with greater expertise to do so. The absence of a viable recovery means also substantially reduces the ability of the Class to resell the laptops as they lack an adequate means to remove their own personal data through a fresh clean and install as well as the resell value of the Products since they will not come with the means to perform a fresh install without exposure to the security risks.

**A FISH OUT OF WATER - RESPONSE TO THE SUPERFISH SECURITY BREACH DISCOVERY**

104. During the Class Period, a group of computer enthusiasts who had purchased a Product and discovered Superfish began discussing the purpose of Superfish, its mechanics, and the inability to fully remove the software (due to the nature of the independence between the software itself and the hijacking root certificate). On its message boards, Lenovo downplayed the software and took no corrective action to greater inform the buying public that Superfish was installed on the Products or inform the purchase precisely what Superfish is, how it operates, and that it exposed the user to serious security vulnerabilities. The discord among this small community of tech enthusiasts expanded to the mainstream press after several prominent security researchers took notice and discovered the truth regarding Superfish and its functions, as alleged herein.

**CLASS ACTION COMPLAINT**

105.    The response was clear and unequivocal.  Defcon security chief and security research Marc Rogers advised the public "[i]f they are affected, they should not use their laptop for any kind of secure transaction until they are able to confirm [the adware] has been removed." But, noted Rogers removing the root certificate that accompanied Superfish was "something the ordinary consumer is not equipped to deal with" and numerous Class members paid third parties to remove Superfish and its accompanying certificate.  On February 20, 2015, the United States Computer Emergency Readiness Team (US-CERT), a department of America's Department of Homeland Security, issued an alert informing consumers of the seriousness of the security vulnerability created by Superfish and urging all users to remove the Superfish program. Microsoft, the developer of the Windows operating system used by the Products, took independent action and deployed a means by which a user could remove Superfish but that means did not work in its entirety depending on browsing software used by the user.

106.    Although initially denying that Superfish exposed users to a security vulnerability, Lenovo changed course and confirmed that Superfish exposed users' computers to "man-in-the-middle" attacks.  In an interview with Re/code, a technology oriented news website, Lenovo Chief Technical Officer Peter Hortensius stated "[w]e messed up" and that its internal engineering team that reviewed Superfish "should have known going in" that the means of Superfish created a vulnerability.  Lenovo further admitted that it received financial benefits from the installation of Superfish onto the Products and indicated that it was not only stopping the installation of Superfish but other forms of "bloatware" software.

107.    Given the commoditization of laptop computers, had consumers been truthfully informed regarding the decrease in user experience caused by Superfish, the security vulnerabilities that they were exposed to, the lack of a commercially usable software backup, and the need to perform substantial technical work on their own in order to make the Products otherwise useable in the ordinary course, consumers would have not purchased the Products or purchased them at a substantially lower price.

108.    Plaintiffs purchased the Products in reliance upon the deceptive advertising and marketing materials utilized by Lenovo in marketing the Products.

**CLASS ACTION COMPLAINT**

109.    Plaintiffs received a product that had performance lower than was reasonably expected given the advertising of the specifications, that was not fit for ordinary use, lacked backup software or a means to create a commercially useable software backup, and required substantially technical work by the user to conform the Product for ordinary use.

110.    Plaintiffs were damaged as a result of receiving a product that was not as advertised, and was in fact inferior to that which was advertised, that resulted in their experiencing man-in-the-middle attacks that resulted in the theft of their personal information, and by expending additional monies in order to conform the product for ordinary use.

## V.    PLAINTIFFS' CLASS ACTION ALLEGATIONS

111.    Plaintiffs bring this lawsuit on behalf of themselves and the proposed Class members under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure. Plaintiffs seek certifications of classes defined as follows:

> **Nationwide Class**
> All persons and entities who purchased within the United States a computer manufactured and distributed by Lenovo and which came with the Superfish program preinstalled during the period between January 1, 2012 through present.

112.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs also bring claims that the Company violated state consumer protection statutes on behalf of separate statewide classes in and under the respective consumer protection statutes of the States of Alabama, Arizona, California, Connecticut, Florida, Georgia, Idaho, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Virginia, Washington, and Wisconsin.  These classes are defined as follows:

> **Statewide Sub-Classes**
> All residents of [name of State or District of Columbia] who purchased in the United States a computer manufactured and distributed by Lenovo and which

came with the Superfish program preinstalled during the period between January 1, 2012 through present.

113.    Excluded from each of the above Classes are Defendants., including any entity in which either Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by a Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of either of the Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

114.    The Class comprises many thousands of consumers throughout California and the United States. The Class is so numerous that joinder of all members of the Class is impracticable. There are questions of law and fact common to the Class. The common questions include:

a)  whether Lenovo had adequate substantiation for the Products claims prior to making them;

b)  whether the claims by Lenovo concerning the specifications of the Products were true, or are misleading or reasonably likely to deceive given the installation of Superfish;

c)  whether the Plaintiffs were deprived of their bargain through the absence of a recovery partition that did not contain Superfish;

d)  whether Class Members who paid for the removal of Superfish are due at a minimum, reimbursement for taking the steps directed by Lenovo to remove the Superfish software;

e)  whether the receipt and transmittals of the private information of the Class Members by Superfish constitute an invasion of privacy;

f)  whether the decrease in system performance and degradation of the user experience caused by Superfish constitutes a trespass to chattel;

g)  whether the concealment of Superfish and/or the means of its operation constituted a fraud on consumers;

**CLASS ACTION COMPLAINT**

h) whether the alleged conduct violates public policy or constitutes violations of the laws asserted herein, including California Business and Professions Code §17500, *et seq.* by engaging in misleading or deceptive advertising; California Civil Code §1750, *et seq.*, by engaging in unfair or deceptive trade practices; California Code §1790, *et seq.*, by breaching express and implied warranties; and Business and Professions Code §17200, *et seq.*, by engaging in unfair, unlawful and/or fraudulent business practices;

i) whether plaintiffs and the Class members sustained monetary or other loss and the proper measure of that loss;

j) whether plaintiffs and Class members are entitled to an award of punitive damages; and

k) whether plaintiffs and Class members are entitled to declaratory or injunctive relief.

115. Plaintiffs' claims are typical of the claims of the proposed Class, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class.

116. Plaintiffs do not have any interests antagonistic to those of the Class. Plaintiffs have retained competent counsel experienced in the prosecution of this type of litigation.

117. The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

118. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. The trial and the litigation of Plaintiffs' claims are manageable.

119. Unless a class is certified, Defendants will retain monies received as a result of its conduct that was taken from Plaintiffs and proposed Class members.

**CLASS ACTION COMPLAINT**

**FIRST CAUSE OF ACTION**
**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030**
**(As Against All Defendants)**

120. Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

121. By their conduct, as set forth above, Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). Pursuant to Section g of the CFAA, Plaintiffs herein asserts a claim against all Defendants for the violation of CFAA and the causing of losses to 1 or more persons during any 1-year period aggregating at least $5,000.00 in value. 18 U.S.C. § 1030(g); (c)(4)(A)(i)(I).

122. CFAA prohibits one from :

    a) Knowingly causing the transmission of a software program, information, code or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer, Section 1030(a)(5)(A);

    b) Intentionally accessing a protected computer without authorization, and as a result of such conduct, recklessly causes damages, Section 1030(a)(5)(B);

    c) Intentionally accessing a protected computer without authorization, and as a result of such conduct, causes damage, Section 1030(a)(5)(C));.

    d) intentionally accessing a protected computer without authorization, or in excess of an authorization, and obtaining information from the Class members' protected computers, 18 U.S.C. § 1030(a)(2).

123. Under the Act, Plaintiffs' and Class members' computers are "protected computers" 18 U.S.C. § 1030(e)(2)(B), as they access the Internet and were used in interstate commerce and communication.

124. Defendants conduct constituted prohibited conduct under the Act, including the conduct prohibited in Sections 1030(a)(5) and 1030(a)(2). Defendants knowingly caused the transmission of Superfish to consumers through the pre-installation of Superfish into the Products, and the subsequent deceptive activation of Superfish by Plaintiffs and the Class.

During the setup and installation of the Products, Superfish was installed.  The installation and activation occurred without the authorization by Plaintiffs or the Class, and, in any event, the Plaintiffs the Class were unable to intelligibly authorize such an installation or activation as a result of the deceptive means and omissions of Defendants.

125.    As part of this installation process, a process implemented and controlled by Defendants, Superfish accessed a protect computer,  installed a root certificate as well as itself, and reconfigured essential security components of the operating system thereby eliminated security layers in the Products and exposing Plaintiffs private data to unauthorized third parties as well as exposing Plaintiffs' to serious security vulnerabilities.  Defendants then, without authorization, or in excess of any authorization, continuously accessed the Class members' computers in order to obtain information from the computers.

126.    Defendants are liable to the Plaintiffs and the Class as their conduct was prohibited under Section 1030(a)(5) and either: (1) intentionally caused damage, (Section 1030(a)(5)(A)); (2) recklessly caused damaged (Section 1030(a)(5)(B)); (3) simply caused damage and loss (Section 1030(a)(5)(C)).    Under the Act, "damage" includes "any impairment to the integrity of availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).  The installation of Superfish damaged the Products by modifying and reconfiguring operating system files on the computer to the extent that the integrity of the system was impaired rendering the Products unusable for routine expected purposes by making the Products and information stored and transmitted by the Products vulnerable to security breaches, impairing the integrity of the information and availability thereto by exposing the Class members' information to third parties as well actively transmitting the data to unauthorized parties, and rendering useless the system restoration software, or means to create a usable system back-up, that was part of the Products.  Moreover, Superfish damaged the Products by introducing additional overhead system utilization that caused the Products to use more energy and heat, as well as allocate finite resources to Superfish resulting in decreased performance to the consumer.  The

127.    The impairment caused to Plaintiffs and the Class members' computers aggregates to at least $5,000.00 in value in any one-year period. As alleged herein, Plaintiffs

have, among other things, had to incur expenses to have Superfish removed by third parties or third party software, exposed to identify theft, been denied use of their computers, been denied full control and access to their computers, and been denied the bargain of usable system back-ups. 18 U.S.C. § 1030(c)(4)(A)(i)(I).

128. Defendants are independently liable to the Plaintiffs and the Class as their conduct was prohibited under 18 U.S.C. § 1030(a)(2) in that Defendants, through Superfish, intentionally accessed the protected computers without authorization, or in excess of an authorization, and obtained information from the Class members' protected computers.

129. Defendants are also each liable for conspiracy to violate CFAA. 18 U.S.C. § 1030(b). Defendants entered into an agreement whereby Superfish, Inc. would develop and license for use by Lenovo in the Products, the Superfish software, and Lenovo would deploy the Superfish software. The Defendants took sufficient steps to improperly obtain private data from Plaintiffs and the Class, in violation of CFAA, through deceptive and unlawful practices resulting in the successful deployment of Superfish and use by Plaintiffs and the Class, thereby causing Plaintiffs and the Class to be damaged as alleged herein.

130. Pursuant to 18 U.S.C. § 1030(g), Plaintiffs seek compensatory damages in an amount to be determined at trial and injunctive relief on behalf of themselves and Class members.

**SECOND CAUSE OF ACTION**
**Violation of the Federal Wiretap Act Title I of the ECPA (18 U.S.C. § 2510 *et seq.*)**
**(As Against All Defendants)**

131. Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

132. Under the Electronic Communications Privacy Act of 1986 (ECPA) it is unlawful for one to intentionally intercept any wire or electronic communication, 18.U.S.C.A. § 2511(1)(a), or intentionally disclose or use the contents of any wire or electronic communication where there is reason to know, or it is known, that the information was obtained in violation of the ECPA, 18.U.S.C.A. § 2511(1)(c); (1)(d).

**CLASS ACTION COMPLAINT**

133.    Defendants intentionally and without authorization intercepted, through the Superfish software, the communications of Plaintiffs and the Class members transmitted to third parties through the Products and the internet.

134.    Defendants intentionally disclosed and used the contents of the communications unlawfully obtained in violation of ECPA 18.U.S.C.A. § 2511(1)(a) by processing the communications, and transmitting the data to third parties, so that advertisements could be injected into Plaintiffs and the Class' internet sessions, and profiles of the Plaintiffs and Class members could be developed for use by Defendants and other third parties.

135.    Pursuant to 18.U.S.C.A. § 2520, Plaintiffs herein asserts a claim against all Defendants for the violation of ECPA and seeks statutory damages of $10,000.00 for each Plaintiff and Class member, punitive damages, injunctive relief, and reasonable attorneys' fees and litigation costs. 18.U.S.C.A. § 2520(b), (c).

### THIRD CAUSE OF ACTION
**Breach of Implied Warranties**
**As Against All Defendants**

136.    Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

137.    Defendant Lenovo  designed, manufactured, marketed and placed the Products into the stream of commerce.  Defendant Superfish, Inc. developed, marketed, and implemented the Superfish software and placed it into the stream of commerce, including within the Products, through its licensing agreement with Lenovo.

138.    Plaintiffs and members of the Class reasonably relied upon Lenovo's reputation, expertise and knowledge of Defendant Lenovo and upon its implied warranty that the Products were of merchantable quality and fit for their intended use.

139.    Plaintiffs and the Class had the reasonable expectation of being able to rely upon the both Lenovo and Superfish, Inc. that the Superfish software would be developed in a competent fashion such that the software would not cause injure to the Plaintiffs and the Class

**CLASS ACTION COMPLAINT**

by, among other things, rendering unusable the Products upon which it was installed, interfering with the use and enjoyment of the Products, and not expose Plaintiffs to serious security vulnerabilities.

140. Defendants knew or had reason to know that Plaintiffs and the members of the Class were influenced by Defendants expertise, knowledge and judgment in furnishing Products fit for their intended use.

141. However, Defendants breached the implied warranty of fitness for a particular purpose. The Products were not fit for ordinary use, as they came installed with the Superfish software that interfered with the use and enjoyment of the Products, caused private data of the users to be shared unknowingly with third parties, and exposed the user to such a significant security vulnerabilities that experts and the government warned users not to use the Products. Moreover, the Superfish software was not fit for its purported purpose of placing third party ads into the search queries of users because the Superfish software indiscriminately intercepted, and exposed to third parties, private data not appropriate for sharing, and in the normal course otherwise encrypted to prevent such sharing, with third parties, and created a serious security vulnerability. In addition, the software extensively reconfigured security layers of the operating system rendering uninstallation in the normal course problematic.

142. The Plaintiffs and the Class purchased the Products for, browsing the internet and utilizing the Products to operate software of their choosing, and for the benefits of themselves and those they knowingly chose. Such use inherently includes the creation, transmission and storage of data intended to remain private and intended only for discovery by intended third parties, and the Plaintiffs and the Class reasonably expected that such products would contain industry standard security layers to protect their information and data transmission.

143. In making their purchases, Plaintiffs relied upon the misrepresentations and omissions of Defendants, and were directly and proximately damaged as a result thereof, as alleged herein. The Plaintiffs and the Class members would not have purchased and/or paid as much for the Products had they known the truth about the Products.

**CLASS ACTION COMPLAINT**

## FOURTH CAUSE OF ACTION
### Trespass to Chattels
### (As Against All Defendants)

144.    Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

145.    The common law prohibits the intentional interference with the use or possession of the personal property of another such that the interference results in the deprivation of the use of the chattel or impairs the quality, condition, or usefulness of the chattel.

146.    As set forth above, the Defendants caused to be installed the Superfish software onto the Products.  The Superfish software , installed and operating without authorization of the Plaintiffs or the Class, interfered with the Plaintiffs' use of the Products and impaired the usefulness of the Products by, among other things: (1) Utilizing finite system resources to monitor and transmit the private data of Plaintiffs; thereby increasing power usage, wear on components, and interfered with the expected performance of the system by creating decreased responsiveness to the user; (2) Injected additional unrequested advertising onto legitimate webpages as well as through pop-up windows substantially impairing the usability of the Products and decreasing the user experience of the Products; (3) Used for its own purpose internet data allotment caps, as well as bandwidth, of the Plaintiffs and the Class, thereby interfering with the performance and data access provided by the internet services purchased by the Plaintiffs and the Class resulting in a decreased internet experience of the user through slower responsiveness and completion times for data requests; (4) rendering system software back-ups unusable; and (4) rendering the Products unusable in the ordinary course as a result of the severe security vulnerabilities caused by the Superfish software.

147.    Defendants acts thereby dispossessed Plaintiffs and the Class members from use and/or access to the Products, and impaired the use, value, and quality of the Products, as well as the internet services purchased by Plaintiffs and the Class.

148.    Accordingly, Defendants engaged in the trespass to chattels in violation of the common law, and Plaintiffs are entitled to damages in an amount to be determined at trial.

### CLASS ACTION COMPLAINT

### FIFTH CAUSE OF ACTION
### Negligent Misrepresentation
### (As Against Lenovo)

149. Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

150. As set forth above, Lenovo misrepresented to Plaintiffs and each Class Member by means of its advertising, marketing and other promotional materials, the performance, usability, functionality of the Products, as well as that the Products would include a useable backup of system software, or a means of obtaining such without additional purchase.

151. Lenovo made the misrepresentations herein alleged with the intention of inducing Plaintiffs and the public to purchase the Products.

152. Plaintiffs and Class members saw, believed, and relied on Lenovo's misrepresentations and, in reliance on them, purchased the Product. Said reliance was reasonable, given Lenovo's clout and generally good reputation among consumers. Plaintiffs and the Class were without the ability to determine the truth of these statements on their own and could only rely on Lenovo's statements in its advertising, marketing and other promotional materials and the Product's label.

153. At the time Lenovo made the misrepresentations herein alleged, it lacked a reasonable basis for believing the representations to be true.

154. As a proximate result of the foregoing negligent misrepresentations by Lenovo, Plaintiffs and the Class members were induced to spend an amount to be determined at trial on the Products and were deprived of a product that met the performance expectations advertised pursuant to the specifications, that was usable in the ordinary course, did not unlawfully transfer the private information of the Class and expose the Class to serious security vulnerabilities, and did not provide a usable backup of the system software or means to obtain such without making an additional purchase from Lenovo. Accordingly, and as a proximate result of Lenovo's misrepresentations set forth herein, Plaintiffs and Class members lost the money they paid for the product in an amount to be determined at trial in that it did not have the qualities they sought, which Lenovo represented to them that it had. Had Plaintiffs and the Class members known of

**CLASS ACTION COMPLAINT**

the true facts about the Products, they would either have not purchased them, or would have not purchased the Products at inflated prices.

155. Accordingly, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(As Against All Defendants)**

156. Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

157. A covenant of good faith and fair dealing is implied in every contract.

158. To the extent that the Products, and Superfish, contained End User License Agreements (EULAs), these licenses constitute contracts between Lenovo, Superfish, Inc. and the Class members including Plaintiffs.

159. By engaging in the acts described herein, Defendants violated the implied covenant of good faith and fair dealing in the EULAs, by among other things, denying Plaintiffs the opportunity to view said licenses prior to the installation, misrepresenting the purpose of the EULA and the underlying software, and omitting material information concerning Superfish, including the means through which it functioned including the reconfiguration of the operating systems security protocols and the installation of alternative certificates that exposed Plaintiffs and the Class private information to interception by third parties.

160. As a result of Defendants conduct, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
**Common Law Fraud**
**(As Against All Defendants)**

161. Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

162. Defendants knowingly and/or recklessly engaged in the deceptive acts, uniform misrepresentations and material omissions complained of herein in order to induce Plaintiffs and

**CLASS ACTION COMPLAINT**

the Class members to purchase the Products and unwittingly use Superfish on their computers without their knowledge.  Defendants utilized the same deceptive acts to induce Class members to send their private data to Superfish, Inc..

163.    Plaintiffs and the Class members relied upon Defendants' deceptive practices, uniform misrepresentations, and omissions.

164.    As a result of Defendants conduct, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.  Moreover, the imposition of punitive damages against Defendants is appropriate as the complained of conduct was malicious, willful, wanton and oppressive, or in reckless disregard of the rights of Plaintiffs and the Class.

165.    Accordingly, Plaintiff and the Class should be awarded restitution in the amount by which Defendants have been unjustly enriched, including, without limitation, all profits obtained by Defendants from its unlawful conduct.

## EIGHTH CAUSE OF ACTION
### Deceptive Advertising Practices
**(California Business & Professions Code § 17500, *et seq.*)**
**(As Against Defendant Lenovo)**

166.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

167.    Beginning prior to the start of the Class Period, January 1, 2012, and continuing to present, Lenovo engaged in advertising and marketing to the public, including the Class, and offered the Products for sale throughout the United States.

168.    Lenovo engaged in broad-based advertising and marketing efforts with the intention of inducing Plaintiffs and the public to purchase the Products

169.    Lenovo's advertisements and marketing representations concerning the expected performance, software standardization, usability, and functionality of the Products are false, misleading and deceptive as alleged herein.

**CLASS ACTION COMPLAINT**

170.    Lenovo also knowingly concealed, suppressed and consciously omitted material facts to Plaintiffs and other members of the Class knowing that consumers would rely on the advertisements and packaging to purchase the Products.  Among the omissions includes that it was installing Superfish, that the performance of its Products were detrimentally impacted by the software installed by Lenovo and thus would not perform according to the hardware specifications, that the software violated the members of the Class' privacy and exposed the Class' members to serious security vulnerabilities, that the Products were not fit for normal use without additional intervention by Class members or a third-party hired by the consumer, and that the Products did not include a useable back-up copy of the included software or means of obtaining such without requiring the Class member to made a separate purchase.

171.    At the time Lenovo made and disseminated the statements alleged herein, it knew or should have known that the statements were untrue or misleading, and acted in violation of Bus. & Prof. Code §17500, et seq. by issuing them nonetheless.

172.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss and damages in the form of, *inter alia*, paying more money for the Product than they would have, and/or by purchasing the Product which they would not have purchased, if the benefits of taking the Product had not been misrepresented, in amounts to be determined at trial.  Plaintiffs and Class members are entitled to restitution, disgorgement, injunctive relief and all other relief allowable under §17500, et seq.

### NINTH CAUSE OF ACTION
**Unfair Business Practices**
**(California Business & Professions Code § 17200, *et seq.*)**
**(As Against All Defendants)**

173.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

174.    The Defendant's conduct, as alleged herein, constitutes unfair competition within the meaning of Bus. & Prof. Code § 17200, *et seq*.

36

**CLASS ACTION COMPLAINT**

175.    Defendant Lenovo's business activities of selling the Products through the use of untrue and misleading advertisements and marketing violated numerous laws governing Lenovo's conduct, as cited herein, and including, among others, Civ. Code §§1572 (fraud), 1709-1710 (willful deception to alter position); 1770(a)(5), 1770(a)(7) and 1770(a)(9) (CLRA violations).

176.    Defendant Superfish, Inc.'s business activities of causing its Products to be installed and utilized by the Class, Defendants' continued use of said software to collect the personal and private information of the Class in order to derive for its own benefit revenues and profits, and the improper means through which Superfish, Inc.'s achieved such, including through the bypassing of security measures the Class reasonably expected not to be circumvented and by installing software the exposed the members of the Class to serious security vulnerabilities, violated numerous laws governing Defendant Superfish, Inc.'s conduct, as cited herein, and including, among others, Civ. Code §§1572 (fraud), 1709-1710 (willful deception to alter position); 1770(a)(5), 1770(a)(7) and 1770(a)(9) (CLRA violations).

177.    Plaintiffs and the Class have suffered injury in fact and lost money or property as a result of such unfair competition.

178.    Plaintiffs, on behalf of themselves and the Class, seek an order of this Court awarding restitution, disgorgement, injunctive relief and all other relief allowed under §17200, et seq., plus interest, attorneys' fees and costs pursuant to, *inter alia*, C.C.P. §1021.5.

## TENTH CAUSE OF ACTION
### Breach of Express Warranty in Violation of
### Cal. Civ. Code § 1790 *et seq.* (Song-Berverly Consumer
### Warranty Act) and Cal. Comm. Code § 2313)
### (As Against Lenovo)

179.    Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

180.    Plaintiffs, and each member of the Class, formed a contract with defendant at the time Plaintiffs and the other members of the Class purchased the Product. The terms of that contract include the promises and affirmations of fact made by Lenovo on its Product labels and

37

**CLASS ACTION COMPLAINT**

through its marketing materials and campaign, as described above.  This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between plaintiffs and the members of the Class on the one hand, and Lenovo on the other.

181.    All conditions precedent to Lenovo's liability under this contract have been performed by Plaintiffs and the Class.

182.    Lenovo has breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the product which could provide the benefits represented as described above.

183.    As a result of Lenovo's breach of its contract, Plaintiffs and the Class have been damaged in the amount of the purchase price of the Products.

**ELEVENTH CAUSE OF ACTION**
**Breach of Cal. Bus. & Prof. Code § 22947.3**
**(As Against All Defendants)**

184.    Plaintiffs reallage and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

185.    Cal. Bus. & Prof. Code § 22947.3 prohibits the taking control of a consumer's computer, modifying computer settings, and the prevention of a user's efforts to block or disable software.

186.    By their conduct, Defendants violated the following provisions of the Cal. Bus. & Prof. Code § 22947.3:

(a)    22947.3(a)(2):  Superfish accessed the consumer's internet service for the purpose of causing damage to the consumer's computer through the decrease in performance of the users' experience and circumventing multiple security layers meant to protect the consumers' private data;

(b)    22947.3(a)(4): Superfish caused the opening of multiple, sequential, stand-alone advertisements in the consumer's Internet browser without the authorization of the class member;

38

**CLASS ACTION COMPLAINT**

(c)     22947.3(b): Superfish modified security settings that were meant to protect the information of the consumers for the purpose of stealing the personal information of the consumer;

(d)     22947.3(c): Superfish falsely represented that the software had been disabled when, in fact, a mere uninstallation of Superfish failed to deactivate and uninstall Superfish, as well as failed to uninstall and remove the Superfish root certificate.

187.    As a result of Defendants conduct, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### Violation of California Invasion of Privacy Act ("CIPA")
### California Penal Code §§ 631 and 637.2
### (As Against All Defendants)

188.    Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

189.    As a result of the conduct alleged herein, Defendants violated California Penal Code § 631. California Penal Code makes it unlawful for one to "willfully or without consent," or by any unauthorized manner, "read[] . . . or learn the contents . . . of any communication" made while "in transit" "over any wire, line, or cable" by use of "any machine, instrument, or contrivance, or in any other manner."

190.    Through the use of Superfish infected Products, the Defendants, in an unauthorized manner, read and learned of the contents of communications made by Plaintiffs and the Class by passing said communications from the Products through wire and cable services (the internet) to third parties.

191.    Plaintiffs' internet communications made through their web browsers with third parties are communications within the meaning of CIPA.

192.    Defendants intercepted Plaintiffs communications through the use of the Superfish infected Products, as well as the servers controlled by Defendants that received the

39

## CLASS ACTION COMPLAINT

information intercepted by the Superfish software, that constitute machines, instruments or contrivances within the meaning of CIPA.

193. The interception occurred while the communications were "in transit." In fact, the Superfish software was specifically developed, and implemented using the deceptive means as alleged herein, so that it could sit between the user and the third party with the purpose of intercepting the communication while in transit.

194. The interception of the communications were done knowingly and willfully by the Defendants in order to profit from Superfish.

195. Defendants were not a party to the communications of Plaintiffs and the Class Members, and the Plaintiffs and Class Members did not consent or authorize Defendants to intercept the Plaintiffs' and Class' communications.

196. As a result of the means by which the Superfish software intercepting and directed the communications it intercepted, the communications were learned by Defendants within the State of California, where Superfish, Inc. principally operates and maintains the servers receiving the intercepted communications.

197. Pursuant California Penal Code § 637.2, Plaintiffs and the Class bring this private right of action for Defendants' violation of CIPA. Under Section 637.2, Plaintiffs need not have suffered any actual damages to obtain recovery. In accordance therewith, Plaintiffs and the Class seek statutory damages in the amount of five thousand dollars ($5,000.00), or in the alternative and if greater, three times the amount of actual damages, along with injunctive relief and reasonable attorneys' fees.

## THIRTEENTH CAUSE OF ACTION
### Violation of the California Consumers Legal Remedy Act, Civ. Code §1750, *et seq.*
### (As Against All Defendants)

198. Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

199. Plaintiffs and the members of the Class are consumers who purchased the Products for personal and/or commercial use.

**CLASS ACTION COMPLAINT**

200.     Defendants engaged in deceptive practices, unlawful competition practices and/or unfair acts as defined by Civ. Code § 1750, et seq. ("CLRA") to the detriment of Plaintiffs and members of the Class who suffered harm thereby, as set forth herein.

201.     Defendants willfully and knowingly caused harm to Plaintiffs and the Class by utilizing false and misleading statements in the marketing, advertising, and promotion of the Products, and by utilizing deceptive practices to induce Plaintiffs to utilize Superfish.

202.     Moreover, Defendants concealed material facts regarding Superfish, its existence on the Products, and the means of its operations. Such information is relied upon by consumers in making purchase decisions.

203.     Plaintiffs and the members of the Class relied upon Defendants' misrepresentation. If Defendants had not made the misrepresentations and failed to disclose the material information regarding Superfish and its means of functioning, Plaintiffs and the Class would not have purchased the Products or utilized Superfish.

204.     By their conduct, Defendants violated the following provisions of the CLRA:

(a) Civil Code § 1770(a)(2): Misrepresenting the source, sponsorship, approval, or certification of goods or services.

(b) Civil Code § 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have.

(c) Civil Code § 1770(a)(7): Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another.

(d) Civil Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised.

(d) Civil Code § 1770(a)(19): Inserting an unconscionable provision in the contract.

205.     Pursuant to Civ. Code § 1780(a), Plaintiffs seek an order enjoining Defendant from engaging in the methods, acts or practices alleged herein.

**CLASS ACTION COMPLAINT**

206.    Irrespective of any representations to the contrary in this Class Action Complaint, Plaintiffs specifically disclaims, at this time, any request for damages or restitution under any provision of the CLRA.

207.    Plaintiffs, on behalf of themselves and the Class, have notified Defendants of the alleged violation of the CLRA, as required by Civ. Code § 1782(a).  If Defendants do not rectify its illegal acts within 30 days of the notice, Plaintiffs intend to amend this Complaint to seek relief pursuant to Civ. Code §1780 for actual damages,  restitution, punitive damages, attorneys' fees and costs; and other relief that this Court deems proper.

208.    In accordance with Civ. Code § 1780(d), Plaintiffs annex hereto a declaration establishing that venue is proper because Defendant Superfish's principal place of business is located in Palo Alto, California, in the county of Santa Clara.  Plaintiff Kate Woods' declaration is annexed hereto, and that Defendants are otherwise subject to personal jurisdiction in this district.


## FOURTEENTH CAUSE OF ACTION
### Violation of the Non-California Consumer Protection Deceptive Trade Practice and Consumer Fraud Statutes
### (As Against All Defendants)


209.    Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

210.    This Cause of Action is pleaded in the alternative to the causes of action brought pursuant to California statute to the extent that such claims will not be applied to non-California residents, or to the extent the California claims fail for any reason.

211.    Plaintiffs and the Class are consumers who purchased the Products designed, manufactured and distributed by Lenovo, and which contained Superfish which was developed by, and distributed under license with the agreement of, Superfish, Inc.

42

**CLASS ACTION COMPLAINT**

212.    Defendants had a statutory duty to refrain from conduct that was unfair or deceptive in connection with the marketing and distribution of the Products and Superfish to Plaintiffs and the Class.

213.    Defendant violated this duty by misrepresenting the nature, quality, usability and benefits of the Products, and omitting material information concerning the Products and Superfish, and used other deceptive means to induce Plaintiffs to purchase the Products and utilize the Superfish software.

214.    Plaintiffs and Class members were directly and proximately injured by Defendants conduct and would not have purchased the Products and/or paid as much for them, had they known the true nature of the Products.  As a result of Defendants conduct, Plaintiffs and the Class were damaged in that they failed to receive goods of the quality advertised or appropriate for their intended use, failed to receive the full bargain in that they did not receive usable system backups, or a means to obtain a suitable system backup, suffered trespass upon their internet service, had their privacy violated and private information procured by unauthorized third parties, and were exposed to serious security vulnerabilities rendering the Products of little value without the Plaintiffs and the Class taking additional actions, and incur additional expenses, to remedy the defect and obtain the full extent of the bargain they paid for when purchasing the Products.

215.    Defendants deceptive acts, misrepresentations and material omissions were, and are, unfair and deceptive acts and practices under each of the respective state consumer protection statutes.

216.    Defendants benefited through the deceptive acts by selling Products that were otherwise unmarketable, obtaining without authorization private data and communications of the Plaintiffs, and earning revenue by utilizing the private data to place ads on Plaintiffs and the Class members' computers.

**CLASS ACTION COMPLAINT**

217.    Accordingly, each of the non-California Plaintiffs assert on behalf of themselves individually and the members of the Class consisting of residents from the same state as the individual Plaintiff(s), a claim pursuant to the following state consumer protection statutes[3]:

a)  Ariz. Rev. Stat. § 44-1522, *et. seq.*;

b)  Conn. Gen. Stat. § 42-110b, *et. seq.*;

c)  Fla. Stat. § 501.201, *et seq.*;

d)  Ga. Stat. § 10-1-392, *et seq.;*

e)  Idaho Code § 48-601, *et seq.*;

f)  Md. Comm. L. Code § 13-101, *et seq.*;

g)  Mass. Gen. L Ch. 93A, *et seq.*;

h)  Mich. Stat. § 445.901, *et seq.*;

i)  Minn. Stat. § 325F.67, *et seq.*;

j)  N.J. Stat. Ann. § 56:8-1, *et seq.*;

k)  N.Y. Gen. Bus. Law § 349, *et seq.*;

l)  N.C. Gen. Stat. § 75-1.1, *et seq.*;

m) Okla. Stat. tit. 15 § 751, *et seq.*;

n)  Or. Rev. Stat. § 646.605, *et seq.*;

o)  73 Pa. Stat. § 201-1, *et seq.*;

p)  Tex. Bus. & Comm. Code § 17.41, *et seq.* although Plaintiffs disclaim, at this time, any request for damages or restitution under any provision of the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA);[4]

q)  Va. Code § 59.1-196, *et seq.*;

---

[3] Plaintiffs herein allege that neither Defendant has a place of business or keeps assets within Massachusetts.  Plaintiffs therefore need not provide a notice of violation in connection with the assertion of claims pursuant to Mass. Gen. L Ch. 93A, *et seq.*

[4] Plaintiffs, on behalf of themselves and the Texas Sub-Class, have notified Defendants of the alleged violation of the DTPA, as required by Tex. Bus. & Comm. Code § 17.505.  If Defendants do not rectify its illegal acts within 60 days of the notice, Plaintiffs intend to amend this Complaint to seek relief pursuant to the DTPA for actual damages,  restitution, punitive damages, attorneys' fees and costs; and other relief that this Court deems proper.

**CLASS ACTION COMPLAINT**

r)   Wash. Rev. Code § 19.86.010, *et seq.*; and

s)   Wis. Stat. § 100.20*, et seq.*

## **RELIEF SOUGHT**

WHEREFORE, Plaintiffs pray for relief and judgment pursuant to the claims other than the claim asserted pursuant to CLRA, as follows:

a.   Determining that this action is a proper class action and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Class Counsel;

b.   Awarding actual and compensatory damages in favor of Plaintiffs  and the other Class members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.   Restitution and disgorgement of all amounts obtained by Defendants as a result of its unlawful activities, together with interest thereon from the date of payment, to the victims of such violations;

d.   Awarding punitive damages in favor of Plaintiffs;

e.   An Order requiring Defendants to immediately cease its wrongful conduct; enjoining Defendants from selling, directly or indirectly, the Products through the use of false and misleading statements complained of herein; ordering Defendants to engage in a corrective notice campaign; and requiring Defendants to implement a full replacement program of all Products, or, in the alternative and at the preference of Plaintiffs and each member of the Class, a refund for the purchased Products; and/or other equitable relief according to proof;

f.   Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees, and all applicable interest; and

45

**CLASS ACTION COMPLAINT**

g.  Such other and further relief as the Court may deem just and proper.

Plaintiffs further prays, at this time and subject to amending, for relief and judgment pursuant to the CLRA for an order enjoining Defendant from engaging in the methods, acts or practices alleged herein.

### JURY TRIAL DEMANDED

Plaintiffs hereby demands a trial by jury.

Dated: April 1, 2015                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

  /s/ Laurence M. Rosen
Laurence M. Rosen (SBN # 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone:    (213) 785-2610
Facsimile:    (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Email: pkim@rosenlegal.com

The Hinton Law Firm
Christopher S. Hinton
275 Madison Ave., 34th Floor
New York, NY 10016
Telephone: (646) 723-3377
Facsimile: (212) 202-3827
Email: chinton@hintonlegal.com

Attorneys for Plaintiff

**CLASS ACTION COMPLAINT**